UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-62697-CIV-SCOLA/OTAZO-REYES

GATEARM TECHNOLOGIES, INC.,
a Florida corporation,

      Plaintiff,

v.

ACCESS MASTERS, LLC, a Florida
limited liability company, and
BLACKSKY TECHNOLOGIES, INC.,
a Florida corporation,
GATEARMS.COM, LLC,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiff Gatearm Technologies, Inc.'s ("Plaintiff" or "Gatearm") Motion to Re-Open, for an Order to Show Cause Why Defendants Should not be Held in Contempt, and to Enforce the Consent Judgment (hereafter, "Motion to Re-Open") [D.E. 56 & 59].[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Robert N. Scola, Jr., United States District Judge [D.E. 74]. The undersigned held a Status Conference on April 19, 2017, at which the parties agreed that the issue of infringement must be determined prior to addressing the issue of contempt. See Order [D.E. 78]. As a preliminary step to deciding the infringement issue, the undersigned held a *Markman* hearing on August 2, 2017 [D.E. 94]. At the conclusion of the *Markman* hearing, the parties agreed that only two instances of claim language require construction by the Court and that the meaning of the remaining claim language instances is undisputed. Accordingly, the

---

[1] The Motion to Re-Open filed at D.E. 59 is a redacted, non-sealed version of the same Motion to Re-Open filed under seal at D.E. 56.

undersigned limits her *Markman* claims construction recommendation to the two claim language instances whose meaning the parties dispute.

## **PROCEDURAL BACKGROUND**

Plaintiff commenced this action on November 26, 2014 with the filing of a Complaint for Patent Infringement against Defendants Access Masters, LLC ("Access Masters") and BlackSky Technologies, Inc. ("BlackSky"). See Compl. [D.E. 1].

On July 10, 2015, the Court stayed the action pending the United States Patent and Trademark Office's ("USPTO") reexamination of the patent-in-suit, namely, U.S. Patent No. 8,845,125 (the "125 Patent"). See Order Granting Motion to Stay Pending Patent Office Reexamination [D.E. 19]. The Court administratively closed the case pending the reexamination. Id.

On September 17, 2015, Plaintiff notified the Court that the USPTO's reexamination had been completed and stated its intention to amend the Complaint [D.E. 20]. Plaintiff attached to its notice the USPTO's Ex Parte Reexamination Certificate for the 125 Patent (hereafter, "Reexamination Certificate"), which shows the amendments to the 125 Patent resulting from the reexamination [D.E. 20-1 at 3]. On September 21, 2015, the Court directed the Clerk of Court to reopen the case and set a deadline of September 29, 2015 for Plaintiff to amend the Complaint. See Paperless Order [D.E. 21]. Thereafter, the Court granted Plaintiff leave to file a Second Amended Complaint [D.E. 32, 35].

In its Second Amended Complaint for Patent Infringement, filed on January 6, 2016, Plaintiff asserted two infringement claims, one related to the 125 Patent and one related to U.S. Patent No. 9,157,200 (the "200 Patent"), against Access Masters, BlackSky and GATEARMS.COM, LLC ("GATEARMS.COM") (collectively, "Defendants"). See Second Am. Compl. [D.E. 36]. Both the 125 Patent and the 200 Patent are entitled "Vehicle Barrier System

2

with Illuminating Gate Arm and Method." Id. ¶¶ 11, 30. Plaintiff alleged that Access Masters and BlackSky compete with it by marketing and selling an infringing LED arm for a gate (the "Accused Product"). Id. ¶¶ 9, 12.

On January 20, 2016, Defendants filed their Answer and Affirmative Defenses to the Second Amended Complaint and a Counterclaim [D.E. 40]. In their Counterclaim, Defendants sought declaratory judgments of invalidity and non-infringement with respect to the 125 Patent (as originally constituted and as modified by the USPTO's reexamination) and the 200 Patent. Id. at 9-12.

On March 11, 2016, the parties settled the case at mediation. See Mediator's Report [D.E. 52]. On March 29, 2016, the Court entered a Consent Decree providing that:

1. Effective five months from the Court's entry of this Order, each Defendant, on behalf of itself and its officers, agents, servants, employees, directors, representatives, successors-in-interest, and all persons, firms or entities acting in concert or participating with them, are permanently enjoined and restrained from manufacturing, advertising, marketing, distributing, selling, offering to sell, importing or exporting the accused "LED Arm for a Gate" or any vehicle barrier system with an illuminating gate arm that would infringe any valid and enforceable claim of U.S. Patent No. 8,845,125 or 9,157,200.

2. U.S. Patent No. 8,845,125 and U.S. Patent No. 9,157,200, owned by GATEARM TECHNOLOGIES, INC., are valid.

3. All claims and counterclaims set forth in the Complaint and Counterclaims entered in this action are hereby dismissed with prejudice, with each party to bear its own fees and costs.

4. The Court retains jurisdiction to enforce the concurrent Settlement Agreement between the parties.

See Consent Decree [D.E. 53]. In its Motion to Re-Open, Plaintiff argues that Defendants have violated the Consent Decree by releasing a new product under an ostensible new design that infringes on the 125 Patent and the 200 Patent. See Motion to Re-Open [D.E. 59]. As noted

above, the parties agree that the first step to be undertaken in connection with the Motion to Re-Open is the construction of two instances of claim language that are in dispute.

## APPLICABLE LAW

Courts have "the power and obligation to construe as a matter of law the meaning of language used in the patent claim." Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." Id. at 1583.[2]

"[T]he words of a claim are generally given their ordinary and customary meaning." Phillips, 415 at 1312. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. "In such circumstances, general purpose dictionaries may be helpful." Id.

---

[2] Extrinsic evidence generally consists of expert testimony. Id. In this case, no expert testimony was presented at the *Markman* hearing and the parties relied only on intrinsic evidence.

4

"The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." Vitronics, 90 F.3d at 1582. "Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id.

The prosecution "history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims. As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims." Id. See also Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

## CLAIM LANGUAGE REQUIRING CONSTRUCTION

After reexamination, only Claims 1-4, 6 and 8 of the 125 Patent were determined to be patentable as amended. See Reexamination Certificate [D.E. 20-1 at 3].[3] The claim language that the parties agree requires construction consists of the following phrases: "**first upper sidewall including a terminating end;**" and "**first lower sidewall including a terminating end.**" See Def's *Markman* Hearing Ex. 1. These phrases and related language are found in Claims 1, 2 and 3 of the 125 Patent, which read as follows:

### CLAIM 1

A vehicle barrier system comprising:

a gate arm formed from a single piece of material having a top convex member and a bottom convex member defining first and second opposing side surfaces, a distal end and a proximal end defining a longitudinal axis therebetween, said

---

[3] Claims 5 and 7 of the original 125 Patent were cancelled as a result of the reexamination. Id.

5

proximal end coupled to a housing having a control system and power supply to selectively pivot said gate arm between a horizontal position and a vertical position, said gate arm including at least a first elongated inset channel centrally disposed in said first side surface defined by said top convex member and said bottom convex member and formed along said longitudinal axis of said gate arm, said first elongated inset channel having a first opening formed by a first pair of inset channel sidewalls integrally joined to a first inset channel backwall, **said first side surface having a first upper sidewall including a terminating end and a first lower sidewall including a terminating end which ends terminate partially within said first opening and spaced from each other**;

at least a first, removable light strip formed from a plurality of light emitting diodes each electrically connected in parallel and physically disposed adjacent one another in series, and encased within a protective member said first light strip cradled entirely within said first elongated inset channel between said backwall and said inset channel sidewalls and **retained therein solely by said terminating ends of said upper and lower sidewalls**;

a first electrical cable connected to said plurality of light emitting diodes; and

an electronic connector electrically releaseably connected to said housing power supply and said first electrical cable;

wherein said first light strip is removeably retained within said first elongated inset channel with said plurality of light emitting diodes aligned towards said first opening such that light from **said plurality of light emitting diodes enumerates through said first opening between the terminating ends** when said plurality of diodes are powered from said power supply.

## CLAIM 2

The vehicle barrier system of claim 1, further comprising a second elongated inset channel centrally disposed in said second side surface defined by said top convex member and said bottom convex member and formed along said longitudinal axis of said gate arm, said second elongated inset channel having a second opening formed by a second pair of inset channel sidewalls integrally joined to a second inset channel backwall, **said second side surface having an upper sidewall including a terminating end and a lower sidewall including a terminating end which ends terminate partially within said second opening and spaced from each other**, said second elongated inset channel disposed opposite and forming a mirror image of said first elongated inset channel.

## CLAIM 3

The vehicle barrier system of claim 2, further comprising a second, removable light strip formed from a plurality of light emitting diodes each electrically

6

connected in parallel and physically disposed adjacent one another in series, and encased within a protective member, said second light strip cradled entirely within said second elongated inset channel between said backwall and said inset channel sidewalls and **retained therein solely by said terminating ends of said upper and lower sidewalls;** and

a second electrical cable connected to said plurality of light emitting diodes and to another electronic connector;

wherein said second light strip is removeably retained within said second elongated inset channel with said plurality of light emitting diodes aligned towards said second opening such that light from **said plurality of light emitting diodes of said second light strip enumerates through said second opening between the terminating ends** when said plurality of diodes are powered from said power supply.

See Reexamniation Certificate [D.E. 20-1 at 3] (emphasis added).

## SPECIFICATIONS

Following are several drawings showing embodiments of the 125 Patent:



FIGURE 1



FIGURE 3

7



FIGURE 6



FIGURE 7

See 125 Patent [D.E. 86-2 at 3-5].

## **DISCUSSION**

The parties' competing interpretations of the claim language at issue is set forth in the table below:

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "first upper sidewall including a terminating end" | A sidewall extending from the first upper inset channel sidewall into the first opening | The upper half of the first side surface, extending from the convex top to its terminal end located in the first opening |
| "first lower sidewall including a terminating end" | A sidewall extending from the first lower inset channel sidewall into the first opening | The lower half of the first side surface, extending from the convex top to its terminal end located in the first opening |

### 1.  Analysis of Plaintiff's proposed construction:

Plaintiff proposes that the term "sidewall" in the phrases "first upper sidewall including a terminating end" and "first lower sidewall including a terminating end" be interpreted as being limited to the "lip" or "fin" that protrudes into the opening, which opening is labeled as #30 and #72 in Figures 6 and 7. This proposed interpretation requires that the terms "sidewall" and "terminating end" refer to the same identical feature, even though they are linguistically different terms. It would also impermissibly render the words "including a" in the claim language superfluous. Subsequent references to the "lip" or "fin" as "terminating ends" rather than sidewalls also militate against Plaintiff's proposed construction. Therefore the undersigned rejects Plaintiff's proposed construction as violative of the "customary and ordinary meaning" standard applicable to claims construction.[4]

### 2.  Analysis of Defendants' proposed construction:

Defendants propose that "sidewall" in the phrases "first upper sidewall including a terminating end" and "first lower sidewall including a terminating end" be interpreted as encompassing the entire upper and lower halves of the first side surface, extending from the

---

[4] Plaintiff also argues that the claim language of the 125 Patent should be construed in light of the claim language of the 200 Patent. The undersigned declines Plaintiff's invitation, given Plaintiff's contention that the 200 Patent is a continuation of the 125 Patent, rather than the other way around.

9

convex top to the terminating ends. This proposed interpretation does not suffer from the infirmities in Plaintiff's proposal given that it does not utilize linguistically different terms to reference the same identical feature, does not render claim language superfluous, and comports with subsequent references to the "lip" or "fin" as "terminating ends" rather than sidewalls. Therefore, the undersigned accepts and adopts Defendants' proposed construction as consistent with the "customary and ordinary meaning" standard.[5]

## RECOMMENDATION

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that the Court adopt Defendants' claims construction, as more fully set forth above.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Robert N. Scola, Jr., United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 4th day of January, 2018.

*Alicia Otazo Reyes*
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Robert N. Scola, Jr.
Counsel of Record

---

[5] Having reached this conclusion based on the claim language, using relevant specifications as an aid, the undersigned need not consider the 125 Patent reexamination history, as requested by Defendants.