| | |
|---|---|
| Gatearm Technologies, Inc., Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 14-62697-Civ-Scola ) |
| Access Masters, LLC, and Blacksky Technologies, Inc. Defendants. | ) ) |

### Order Adopting Magistrate's Report and Recommendation

This matter was referred to United States Magistrate Judge Alicia M. Otazo-Reyes for a report and recommendation on the Plaintiff's motion to reopen, for an order to show cause why Defendants should not be held in contempt, and to enforce the consent judgment (Mot., ECF No. 59). On January 4, 2018, Judge Otazo-Reyes issued a report, recommending that the Court adopt the Defendants' claim construction. (R. & R., ECF No. 95.) The Plaintiff filed objections to the report (ECF No. 97), to which the Defendants responded (ECF No. 98). Having considered Judge Otazo-Reyes's report, the record in this case, and the relevant legal authorities, this Court **adopts** Judge Otazo-Reyes's report (**ECF No. 95**) for the reasons set forth below.

**1. Background**

This case involves claims of patent infringement of two patents (8,845,125 ('125 patent) and 9,157,200 ('200 patent)) for LED arms for vehicle and pedestrian traffic gates. (*See* Second Am. Compl., ECF No. 36.) The Plaintiff provides access control products, including LED gate arms, and is the owner of the '125 and '200 patents. Essentially, the Plaintiffs' gate arms feature small outer cavities on either side that serve as housings for strips of LED lights. The Defendant Access Masters, LLC ("Access Masters") competes with the Plaintiff in the marketing and distribution of security products, including LED gate arms. The Defendants Blacksky Technologies, Inc. ("Blacksky") and Gatearms.com distribute Access Masters products. The Plaintiff alleges that the Defendants collectively infringed the '125 and '200 patents by manufacturing and selling a similar LED gate arm. The design at issue is depicted as follows in the '125 and '200 patents:



(Fig. 7)　　　　　　　　　　　　　　(Fig. 9)

The Defendants' accused product, which the Plaintiff contends infringed its patents is pictured below:



The parties participated in mediation and settled this case in early 2016. (*See* ECF No. 52.) Following the parties' settlement, the Court entered a consent decree that permanently enjoins the Defendants from "manufacturing, advertising, marketing, distributing, selling, offering to sell, importing or exporting the accused 'LED Arm for a Gate' or any vehicle barrier system with an illuminating gate arm that would infringe any valid and enforceable claim" of the '125 or '200 patents. (ECF No. 53.) Thus, the Court did not have an opportunity to engage in any substantive analysis of the patents, or otherwise determine whether an infringement occurred. After entry of the consent decree, the Court closed this case.

Less than nine months later, the Plaintiff filed its motion to reopen, in which it contends that the Defendants are in contempt of the consent decree because they have released a new product that infringes upon the '125 and '200 patents, and therefore, violates the consent decree. The Defendants' new product appears below:



Judge Otazo-Reyes held a status conference on the Plaintiff's motion, during which the parties agreed that prior to determining the issue of contempt, the Court would have to determine the issue of infringement. (ECF No. 78.) Accordingly, Judge Otazo-Reyes set a *Markman* hearing. (*Id.*)[1]

During the *Markman* hearing, Judge Otazo-Reyes heard argument regarding the claim terms that the parties dispute. The parties agreed with Judge Otazo-Reyes's assessment that only two particular phrases appearing in Claims 1, 2, and 3 of the '125 patent require construction—"first upper sidewall including a terminating end" and "first lower sidewall including a terminating end."

Ultimately, Judge Otazo-Reyes recommends that the Court adopt the Defendants' proposed claim construction. (*See* R. & R., ECF No. 95 at 9-10)

---

[1] At the *Markman* hearing, the parties also agreed that the ultimate adjudication of the Plaintiff's motion will require an evaluation of claim construction, followed by a determination of infringement, and thereafter, a finding regarding contempt. Thus, the present report is the first in a potential sequence of three. (*See* Tr. of *Markman* Hr'g, ECF No. 96 at 88-89.)

because it is consistent with the "customary and ordinary meaning" standard applicable in patent claim construction. (*Id.* at 10.)

The Plaintiff has filed objections to Judge Otazo-Reyes's report. (*See* Objs. to R. & R., ECF No. 97.)

## 2. Legal Standard

### A. Objections to a report and recommendation

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir.1989)) (alterations omitted). The objections must also present supporting legal authority. Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783-84 (quoting *Heath,* 863 F.2d at 822) (alterations omitted). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Id.* at 784 (quoting *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).

### B. Legal Principles of Claim Construction

Claim construction is the process of construing disputed terms within a patent claim. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The goal of claim construction is to give disputed terms their "ordinary and customary meaning" as the term would mean to "a person of ordinary skill in the art in question. . . as of the effective filing date of the patent application." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). A person of ordinary skill in the relevant art is the standard used because patents are addressed to others skilled in the pertinent art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

When a term requires construction, the Court's task is a limited one. The Court must construe only those terms that are in controversy, and "only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sc. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Claim construction involves defining a term in its appropriate context. "[T]here is no magic formula. . . for conducting claim construction. Nor is the court barred from considering any

particular sources or required to analyze the sources in any specific sequence[.]" *Phillips*, 415 F.3d at 1324. "To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history." *Markman*, 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)).

The claim itself often provides substantial guidance as to the meaning of particular claim terms. *See Vitronics*, 90 F.3d at 1582. Because claim terms are normally used in a consistent manner throughout a patent, usage of a term in one claim can illuminate the meaning of the same term in another claim. *Phillips*, 415 F.3d at 1324.

The claims must also "be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979 (internal citations omitted). "The specification contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention." *Id.* Furthermore, a patent's specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. For this reason, the specification is "the primary basis for construing the claims." *Phillips*, 415 F.3d at 1315. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.*, at 1316 (citing *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir 1998)).

Courts also consider a patent's prosecution history, if it is in evidence, to illuminate a disputed term. *Markman*, 52 F.3d at 980. A patent's prosecution history can consist of the complete record of the proceedings before the United States Patent Trademark Office ("USPTO") and can include the prior art cited during the examination of the patent, which, like the specification, can shed light on how the inventor and USPTO understood the patent. *Phillips*, 415 F.3d at 1317. However, courts are wary of placing too much emphasis on the prosecution history because it reflects an ongoing negotiation between the USPTO and the inventor, and thus can lack the clarity needed to be a helpful resource. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (concluding that the evidence in the patent's prosecution history produced contradictory interpretations). Nonetheless, when the prosecution history in evidence clearly disclaims an interpretation, the disclaimed interpretation should be excluded from the claim construction. *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988).

Finally, the Court may also rely upon extrinsic evidence, such as treatises and dictionaries, to illuminate the meaning of claim terms. Because extrinsic evidence is external to the patent, sometimes authored by persons not

skilled in the art in question, and does not have the benefit of being created at the time of, or in view of, the asserted patents, it is considered less reliable, and thus, holds less weight in claim construction. *Phillips*, 415 F.3d at 1318 (explaining reasons why extrinsic evidence is generally less reliable than intrinsic evidence in determining how to read claims).

In sum, the Court construes only those claim terms which require construction, and only then to the extent necessary to resolve the dispute. The Court looks first to the claim itself and the specification. The Court may also consider the patent's prosecution history and various extrinsic sources, though extrinsic evidence is weighted less than intrinsic evidence in claim construction.

### 3. Analysis

At the *Markman* hearing, the parties proposed the following construction of terms:

| Claim Language | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- | --- |
| "first upper sidewall including a terminating end" | A sidewall extending from the first upper inset channel sidewall into the first opening. | The upper half of the first side surface, extending from the convex top to its terminal end located at the first opening. |
| "first lower sidewall including a terminating end" | A sidewall extending from the first lower inset channel sidewall into the first opening. | The lower half of the first side surface, extending from the convex bottom[2] to its terminal end located in the first opening. |

In reaching her recommendation that the Court adopt the Defendants' proposed construction of the terms, Judge Otazo-Reyes reasoned that the Plaintiff's proposed construction requires that "sidewall" and "terminating end" refer to the same feature, which would render the terms "including a" impermissibly superfluous. (*See* R. & R., ECF No. 95 at 9.) Judge Otazo-Reyes reasoned further that subsequent references to a "lip" or "fin" to refer to terminating ends rather than sidewalls also undermine the Plaintiff's proposed interpretation of terms. (*Id.*) Ultimately, Judge Otazo-Reyes recommends the Defendants' proposed claim construction because it does not utilize

---

[2] The Court assumes that reference in the report to the convex "top" in the construction of terms referring to the "first lower sidewall" is a scrivener's error. (*See* Defs. Opening Claim Constr. Br., ECF No. 87 at 9.)

linguistically different terms to refer to the same structural feature, and does not render an claim language superfluous. (*Id.* at 10.)

In its objections, the Plaintiff argues that (1) Judge Otazo-Reyes reached her conclusion based on an improper linguistic analysis; (2) Judge Otazo-Reyes's interpretation renders the "terminating end" as a separate structure from the "sidewall"; and (3) Judge Otazo-Reyes committed error by relying upon references to a "lip" or "fin" to refer to "terminating ends." Upon review, the Court determines that the Plaintiff's objections are without merit.

The Plaintiff contends that the Defendants' new product infringes upon the '125 patent:




('125 design)　　　　　　　　　　　(New product)

In construing terms, the Court begins with the language of the claim itself. Claim 1 of the '125 patent states, in pertinent part,

> A vehicle barrier system comprising:
> a gate arm formed from a single piece of material having a top convex member and a bottom convex member defining first and second opposing side surfaces, a distal end and proximal end defining a longitudinal axis therebetween, said proximal end coupled to a housing having a control system and power supply to selectively pivot said gate arm between a horizontal position and a vertical position, said gate arm including at least a first elongated inset channel centrally disposed in said first side surface defined by said top convex member and said bottom convex member and formed along said longitudinal axis of said gate arm, said first elongated inset channel having a first opening formed by a first pair of inset channel sidewalls integrally joined to a first inset

> channel backwall, said first side surface having a **first upper sidewall including a terminating end and a first lower sidewall including a terminating end** which ends terminate partially within said first opening and spaced from each other[.] (emphasis added)

(ECF No. 36-4.)[3] As previously stated, the goal of claim construction is to give "ordinary and customary meaning" to terms as ascribed by persons of ordinary skill in the arts in question. *See Vitronics Corp.*, 90 F.3d at 1582. Given the language of the claim, Judge Otazo-Reyes determined that the ordinary and customary meaning of the disputed claim terms means that the terminating ends form part of the upper and lower sidewalls, and are not separate sidewalls, as suggested in the Plaintiff's proposed construction. The Plaintiff provides no authority for its contention that Judge Otazo-Reyes's analysis was improper. Indeed, in the task of assigning terms their ordinary and customary meaning, it makes sense that some linguistic analysis is required. Moreover, the Plaintiff's second objection assumes and argues the exact opposite of Judge Otazo-Reyes's recommendation. Judge Otazo-Reyes's recommendation acknowledges that the terminating end is a part of the sidewall and should not be defined separately in the context of the patent, as the Plaintiff seeks to do. Also contrary to the Plaintiff's contention, upon a review of the record, Judge Otazo-Reyes did not rely upon references to a "lip" or "fin" to reach her conclusion that the Plaintiff's claim construction should be rejected, but offered the observation that such references further undermine the Plaintiff's proposed interpretation of terms.

Furthermore, the Plaintiff's proposed construction is inconsistent with the patent specification, which refers to the upper and lower sidewalls with their respective ends as the key features for retaining the LED light arrays. For example, the '125 patent specification states that

> the first upper sidewall and the first lower sidewall each terminate partially within the first opening for removably securing the at least one light strip within the first elongated inset channel, [and]
>
> the vehicle barrier system further includes a top member comprising a semi-circular shape having one end terminating partially within the first opening, and

---

[3] This language comes from the Ex Parte Reexamination Certificate, which amended the '125 patent after the USPTO completed its reexamination of the '125 patent in 2015. (*See* ECF No. 20.)

another end terminating partially within the second opening, and a bottom member comprising a semi-circular shape having one end terminating partially within the first opening, and another end terminating partially within the second opening[.]

(ECF No. 36-1 at 8.) In describing Figure 6, which is pictured below, the specification states, "the first upper and lower sidewalls **50**, **56** terminate partially within the opening of inset channel **30**. (*Id.* at 11.) In addition, the specification continues to state that the "[t]erminating ends of both the first and upper and lower sidewalls **50**, **56** help retain the first array of light emitting diodes [] within the inset channel." (*Id.*) The "convex top member **48**" in turn, is "integrally formed to include a first upper sidewall **50**, and a second upper sidewall **52**." (*Id.*) Structures 60 and 62 are described as "inset channel sidewalls" and structure 64 is the "inset channel backwall," which together "define the inset channel **30** having an opening." (*Id.*)



(Figure 6)[4]

The Plaintiff's proposed construction—a sidewall extending from the first upper/lower inset channel sidewall into the first opening—seeks to insert an entirely new structure—a sidewall defined independently from the top/bottom convex members of the gate arm formed by the upper and lower sidewalls and

---

[4] Figure 6 is modified to eliminate the numbers not discussed in this order, and to avoid confusion.

their terminating ends, or the inset channel sidewalls, all of which are clearly delineated in the claim language and patent specification. Such an interpretation, as correctly found by Judge Otazo-Reyes, would be contrary to the ordinary and customary meaning of the terms of the claim language.

In contrast, the Defendant's proposed construction—the upper/lower half of the first side surface, extending from the convex top/bottom to its terminal end located at the first opening—is consistent with the ordinary and customary meaning of terms in the claim language, and the patent specification.

### 4. Conclusion

Accordingly, the Court **affirms and adopts** Judge Otazo-Reyes's report (**ECF No. 95**), and the following claim construction applies:

| Claim language | Construction |
| --- | --- |
| "first upper sidewall including a terminating end" | The upper half of the first side surface, extending from the convex top to its terminal end located at the first opening. |
| "first lower sidewall including a terminating end" | The lower half of the first side surface, extending from the convex bottom to its terminal end located in the first opening. |

**Done and ordered** at Miami, Florida, on May 23, 2018.

_____
Robert N. Scola, Jr.
United States District Judge